Lina Stillman, Esq.
Stillman Legal, P.C.
42 Broadway, 12t Floor
New York, New York 10004
Tel (212) 203-2417
www.stillmanlegalpc.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

-------------------------------------- X

JAIME ORTIZ and
CARLOS SUAREZ, *individually
and on behalf of others similarly
situated*

                      Plaintiffs,

           v.

THE VALET KING LLC,
THE VALET KING NY LLC and
JONATHAN FUDA

                    Defendants,

-------------------------------------- X

Case No:

**29 U.S.C. § 216(b) COLLECTIVE
ACTION & F.R.C.P. 23 CLASS
ACTION**

**COMPLAINT**

Plaintiffs JAIME ORTIZ and CARLOS SUAREZ (hereafter referred to as "Plaintiffs"), bring this Action on behalf of themselves and other similarly situated employees of Defendants THE VALET KING LLC, THE VALET KING NY LLC, and JONATHAN FUDA (collectively, the "Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 USC §§ 201 *et seq.* and the New Jersey State Wage and Hour Law, NJSA §34:11-56 *et seq* ("NJWHL"), and alleges as follows:

**INTRODUCTION**

1. This action is brought by the Plaintiffs, on behalf of themselves as well as other employees similarly situated, against Defendants for alleged violations of the

1

Federal Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New Jersey State Wage and Hour Law, NJSA §34:11-56 *et seq* ("NJWHL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.  This Complaint seeks to recover unpaid minimum wages and overtime compensation for the Plaintiffs.

3.  The plaintiffs are former employees of Defendants THE VALET KING LLC and THE VALET KING NY LLC, a New Jersey Corporation with headquarters at 7800 River Rd, North Bergen, NJ 07047, and 660 River Rd, Edgewater, NJ 07020. Its principal, Defendant JONATHAN FUDA, employed the Plaintiffs as valets for the Defendants' company in New Jersey.

4.  Plaintiff ORTIZ was paid $14 per hour from February 18, 2023 to March 18, 2023, and subsequently $5 per hour from March 19, 2023 until September 16, 2023. Plaintiff SUAREZ was paid $5 per hour from November 15, 2023 until January 11, 2024, and $8 per hour from January 12, 2024 to present. The plaintiffs were not paid any overtime despite working approximately more than 40 hours per week.

5.  At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring the Plaintiffs and the FLSA collective employees to work more than 40 hours per week without providing them with any additional compensation.

6.  Upon information and belief, Defendants have systematically and willfully violated the FLSA and NJWHL through their deliberate pattern and practice of: (i) failing to pay their employees, including Plaintiffs, the statutory minimum wage; and (ii) failing to provide overtime compensation at the rate of one and one-half times the regular hourly rate for all hours worked in excess of forty (40) hours per workweek.

7. Defendants refused to record all of the time that the Plaintiffs and similarly situated individuals employed by the Corporate Defendant worked, including the work performed in excess of forty hours each week.

8. Accordingly, Plaintiffs bring this Action on behalf of themselves and all similarly situated individuals to recover: (i) unpaid minimum wages; (ii) unpaid overtime compensation; (iii) damages for Defendants' failure to maintain required employment records; and (iv) all other available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New Jersey State Wage and Hour Law ("NJWHL"), N.J.S.A. §34:11-56 *et seq.*

9. Plaintiffs allege, pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid overtime wages, (2) unpaid minimum wage, (3) liquidated damages, (4) prejudgment and post-judgment interest, and/or (5) attorneys' fees and costs.

10. By reason of such willful violations, the Plaintiffs assert they are entitled to recover from the Defendants (1) unpaid overtime wages, (2) unpaid minimum wage, (3) liquidated damages, (4) prejudgment, and post-judgment interest; and/or (5) attorneys' fees and costs, pursuant to the FLSA and NJWHL.

## JURISDICTION AND VENUE

11. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey State Law claims pursuant to 28 U.S.C. § 1367(a).

12. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and

omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

### Plaintiffs

13. Plaintiff JAIME ORTIZ is and was at all times relevant hereto an individual residing in New Jersey.

14. Plaintiff was employed by Defendants THE VALET KING LLC and THE VALET KING NY LLC at its company located at 7800 River Rd, North Bergen, NJ 07047, and 660 River Rd, Edgewater, NJ 07020, from on or about February 18, 2023, until September 16, 2023, as a valet.

15. At all times relevant hereto, Plaintiff ORTIZ was a covered employee within the meaning of the FLSA and the NJWHL.

16. Plaintiff CARLOS SUAREZ is and was at all times relevant hereto an individual residing in New Jersey.

17. Plaintiff was employed by Defendants THE VALET KING LLC and THE VALET KING NY LLC at its company located at 7800 River Rd, North Bergen, NJ 07047, and 660 River Rd, Edgewater, NJ 07020, from on or about November 15, 2023, to date, as a valet.

18. At all times relevant hereto, Plaintiff SUAREZ was a covered employee within the meaning of the FLSA and the NJWHL.

### Defendants

19. Defendants THE VALET KING LLC and THE VALET KING NY LLC are, upon information and belief, duly organized New Jersey business corporations organized under the laws of the State of New Jersey with a place of business located at 7800 River Rd, North Bergen, NJ 07047 and 660 River Rd, Edgewater, NJ 07020.

20. Upon information and belief, Defendants THE VALET KING LLC and THE VALET KING NY LLC are engaged in interstate commerce and generate annual gross revenues in excess of Five Hundred Thousand Dollars ($500,000) per year, exclusive of excise taxes, for each year relevant to Plaintiffs' claims. Defendants' interstate commerce activities include, but are not limited to, utilizing products and materials that have been transported across state lines.

21. Upon information and belief, Defendant JONATHAN FUDA is a principal/Officer of Defendants THE VALET KING LLC and THE VALET KING NY LLC.

22. Upon information and belief, and at all times relevant to the claims herein, Defendant JONATHAN FUDA: (i) was known as and referred to as "Boss" by the Plaintiffs and the other similarly situated employees of Defendants THE VALET KING LLC and THE VALET KING NY LLC known as "Boss" to Plaintiff; (ii) determined the wages and compensation of the employees of Defendants, including Plaintiff; and (iii) established work schedules and workload of the employees, maintained employee records, and had the authority to hire and fire employees.

23. Defendant JONATHAN FUDA, in fact, did hire Plaintiff, determined their work assignments, workload, and schedule, and determined/calculated their pay, rate of pay, and hours worked.

24. Defendant JONATHAN FUDA acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NJWHL §34:11-4.1 and the regulations thereunder.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

25. The Plaintiffs bring this action individually and on behalf of all other and

former non-exempt valets who have been or were employed by the Defendants for up to the last three (3) years, through the entry of judgment in this case (the "Collective Action Period") and who have not compensated at least the overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

26. With respect to their NJWHL claims, The Plaintiffs assert the same pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is two (2) years before the filing of the Complaint in this case as defined herein (the "Class Period").

27. All said persons, including the plaintiffs, are referred to herein as the "Class."

28. The Class members, numbers, and identities, are readily ascertainable and may be determined from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member are also determinable from the Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under the F.R.C.P

*Numerosity*

29. The proposed Class is so numerous that the joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

6

30. There are questions of law and fact common to the Class that dominate over any questions affecting only individual class members, including:

   a. Whether Defendant employed the Plaintiffs and the Class within the meaning of the NJWHL;

   b. Whether the Plaintiffs and Class members are entitled to and paid minimum wage, and overtime under the NJWHL;

   c. Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of the Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

   d. At what common rate, or rates subject to the common method of calculation was and are Defendants required to pay the Class members for their work;

*Typicality*

31. The plaintiff's claims are typical of those that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. The plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

*Adequacy*

32. The plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. The plaintiffs are represented by attorneys

who are experienced and competent in successfully prosecuting both class action and wage-and-hour employment litigation cases.

*Superiority*

33.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is

empowered to, fashion methods to efficiently manage this action as a class action.

34. Upon information and belief, Defendants and other employers throughout the state violate the NJWHL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

35. The Plaintiffs consent to be named a party herein, pursuant to 29 USC § 216(b), and brings these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 USC § 216(b).

## **COMMON FACTUAL ALLEGATIONS**
Defendants Constitute Joint Employers

36. Defendants owned and operated THE VALET KING LLC and THE VALET KING NY LLC, a corporate entity principally engaged in the valet services industry. At all relevant times, Defendants THE VALET KING LLC, THE VALET KING NY LLC, and JONATHAN FUDA possessed operational control over Defendant Corporation, possessed an ownership interest in Defendant Corporation, and/or controlled significant functions of Defendant Corporation.

37. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed The Plaintiffs and the other class member employees by engaging in a pattern and/or policy of violating the FLSA. This pattern and/or policy includes, inter alia, the following:

      a. failing to pay employees the applicable minimum wage and overtime rate for all time worked in excess of forty (40) hours per week;

      b. failing to keep accurate records of hours worked by employees as required by the FLSA and NJWHL.

38. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation. Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damage to the Plaintiffs and the other class members.

39. Defendants THE VALET KING LLC and THE VALET KING NY LLC, under the direct supervision and authority of Defendant JONATHAN FUDA, acted in the interest of the Defendants with respect to its employees, the rate of and method employee compensation was paid, and shared joint control over their employees.

40. At relevant times, Defendants THE VALET KING LLC, THE VALET KING NY LLC, and JONATHAN FUDA possessed substantial control over the Plaintiffs' and other similarly situated employees' working conditions and over the policies and practices with respect to the employment and compensation of the Plaintiffs and all similarly situated individuals referred to herein.

41. Defendants THE VALET KING LLC, THE VALET KING NY LLC, and JONATHAN FUDA jointly employed the Plaintiffs and all similarly situated individuals and are Plaintiffs' and all similarly situated individuals' employers within the meaning of 29 USC 201 et seq. and the NJWHL.

42. Defendants THE VALET KING LLC, THE VALET KING NY LLC, and JONATHAN FUDA constitute a single employer of the Plaintiffs and/or similarly situated individuals, as any business divisions between them are fictional.

43. At all times relevant hereto, Defendants THE VALET KING LLC, THE VALET KING NY LLC, and JONATHAN FUDA were the Plaintiffs' employers within the meaning of the FLSA, NJWHL, and other applicable laws. Such Defendants had the authority and power to hire and fire the Plaintiffs and other similarly situated employees, control the terms and conditions of their employment, including work assignments and hours, and determine the rate and method of any compensation in exchange for Plaintiffs' services. Indeed, the Defendant supervised the plaintiff's work schedule and conditions of their employment.

44. Defendants further controlled, supervised, guided, and instructed what limited recordkeeping took place, which the Plaintiffs contend is deficient pursuant to FLSA and NJWHL requirements.

45. Defendants are aware of and by law are charged with the knowledge that under the FLSA, Defendants are required to pay employees performing non-exempt duties, including the Plaintiffs and the other class members, overtime pay at a one-and-one-half the regular rate for work in excess of forty (40) hours per work week.

46. At all relevant times, Defendants knowingly and willfully failed to pay the Plaintiffs their lawfully owed wage, at least the lawfully minimum wage, and overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

47. While employed by Defendants, the Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

48. Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

### *Plaintiff JAIME ORTIZ*

49. From February 18, 2023, until September 16, 2023, Defendants employed plaintiff to work as a valet at THE VALET KING LLC and THE VALET KING NY LLC, located at 660 River Rd, Edgewater, NJ 07020.

50. Plaintiff ORTIZ worked as a valet. During his first month of employment, he was paid $14 per hour. Subsequently, his compensation was reduced to approximately $5 per hour, supplemented only by sporadic tips that averaged between $15 and $25 per shift. The plaintiff worked every day of the week, Monday through Sunday. From Monday to Friday, he worked from 8:00 A.M. to 10:00 P.M., and on Saturdays and Sundays, from 11:00 A.M. to 2:00 A.M. Although the schedule could vary with shift changes, the plaintiff consistently worked around 80 hours per week. He was paid via direct deposit, did not clock in or out, and he was not given a formal lunch break.

51. At all relevant times, Defendants did not possess a time clock in order to record, document, and memorialize Plaintiff's work hours, and Plaintiff was not required to record his hours of work otherwise.

52. From February 18, 2023, until March 18, 2023, Plaintiff was paid $14 per hour, the underpayment per week was $1,125, and the total underpayment of that period of time was $4,500. From March 19, 2023, until September 16, 2023, Plaintiff was paid $5 per hour, the underpayment per week was $1,350, and the total underpayment of that period of time was $35,100.

53. Defendants never paid Plaintiff overtime for those hours he worked beyond forty (40) hours per week.

54. Defendants did not provide Plaintiff with each payment of wages an accurate statement of wages and never provided Plaintiff with written notice of his rate of pay,

employer's regular payday, and such other information as required.

### *Plaintiff CARLOS SUAREZ*

55. From November 15, 2023, to date, Defendants employed plaintiff to work as a valet at THE VALET KING LLC and THE VALET KING NY LLC, located at 660 River Rd, Edgewater, NJ 07020.

56. Plaintiff's schedule was Monday through Thursday from 8:30 A.M. to 3:00 P.M., and on Fridays from 8:30 A.M. to 9:00 P.M. Initially, he was paid $5 per hour, with his wage increasing to $8 per hour as of January 12, 2024. Payments were made biweekly via bank transfer. The plaintiff had a 30-minute lunch break.

57. At all relevant times, Defendants did not possess a time clock in order to record, document, and memorialize Plaintiff's work hours, and Plaintiff was not required to record his hours of work otherwise.

58. From November 15, 2023, until December 31, 2023, Plaintiff was paid $5 per hour, the underpayment per week was $360, and the total underpayment of that period of time was $2,520. From January 1, 2024, until November 30, 2024, Plaintiff was paid $5 per hour, the underpayment per week was $360, and the total underpayment of that period of time was $17,280. From December 1, 2024, until December 31, 2024, Plaintiff was paid $8 per hour, the underpayment per week was $84, and the total underpayment of that period of time was $4,704. From January 1, 2025, until March 13, 2025, Plaintiff was paid $8 per hour, the underpayment per week was $84, and the total underpayment of that period of time was $840.

59. Defendants never paid Plaintiff overtime for those hours he worked beyond forty (40) hours per week.

60. Defendants failed to provide Plaintiff with: (1) accurate wage statements with

13

each pay;ment of wages and (2) written notice of his rate of pay, employer's regular payday, and other information required by New Jersey Wage and Hour Law.

### Defendants' General Employment Practices

61. As part of their regular business practices, Defendants required the Plaintiffs to work without paying the Plaintiffs the proper minimum and overtime wages required by law.

62. Defendants willfully violated the record-keeping requirements of the FLSA and NJWHL by failing to maintain <u>accurate</u> and complete records of employees' work hours, wages paid, rates of pay, and other mandatory employment records.

63. By employing this practice, Defendants avoided paying the Plaintiffs at the overtime rate of time and a half for all of their hours worked in excess of forty (40) hours per week.

64. Defendants failed to post the statutorily required wage and hour posters and did not provide the Plaintiffs with statutorily required wage and hour records or statements of pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiff's relative lack of sophistication in wage and hour laws.

65. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours the Plaintiffs worked, and to avoid paying the Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) minimum wage.

66. Defendants failed to provide Plaintiffs and other employees with the legally required written notice, both at hiring and annually before January 1st, in English and in the employees' primary languages. This notice was required to contain:

(a) The rate(s) of pay and basis thereof( hourly, shift, day, week, salary, piece,

commission, or other);

(b) Any allowances claimed as part of the minimum wage;

(c) The designated regular payday;

(d) The employer's legal name and any "doing business as" names;

(e) The physical address of the employer's main office and mailing address, if different; and

(f) The employer's telephone number.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Minimum Wage and Overtime Wage Brought on behalf of the Plaintiffs and the FLSA Collective]

67. Plaintiffs, on behalf of themselves and the other similarly situated class members, re-allege and incorporate by reference all allegations in all preceding paragraphs as though fully set forth herein.

68. At all times relevant to this action, Defendants were Plaintiff's' employers within the meaning of the Fair Labor Standards Act, 29 USC § 203(d). Defendants had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for his employment.

69. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce, and as such constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 USC § 203 (r-s).

70. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee

15

receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

71. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of his unpaid minimum wage and overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

72. Defendants' failure to pay the Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

73. Defendants maintained and continue to maintain a policy and practice of refusing to pay Plaintiffs and Collective Action Members both minimum wage and overtime compensation at one and one-half times their regular rate for hours worked in excess of forty (40) per workweek. This practices violate the FLSA, 29 U.S.C. §§201 *et seq.*, specifically §§207(a)(1) and 215(a).

74. The FLSA and supporting regulations require employers to notify employees of applicable employment law requirements. 29 C.F.R. §516.4.

75. Defendants willfully failed to notify the Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's and FLSA Collectives' labor.

76. Throughout the relevant time period, the Plaintiffs and the FLSA collective worked in excess of forty (40) hours per workweek.

77. At all relevant times throughout his employment, Defendants operated under a policy of willfully failing and refusing to pay the Plaintiffs and the FLSA collective one

and one-half times the regular hourly rate of pay for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA, even though the Plaintiffs and the similarly situated class members were entitled to receive overtime payments, all in violation of 29 USC § 207 (a)(1).

78. At all relevant times throughout the Plaintiffs and the class members' employment, Defendants willfully, regularly, and repeatedly failed to pay the required overtime rate of one and one-half times their regular hourly rate for hours worked in excess of forty (40) hours per workweek.

79. Defendant's failure to pay the Plaintiffs overtime compensation was willful within the meaning of 29 USC § 255(a).

80. Defendants violated the FLSA by failing to pay Plaintiffs AVILA and SUAREZ their agreed-upon wages through implementation of unlawful withholding policies, time-clock policies, and chargeback policies as detailed above.

81. Defendants failed to satisfy the FLSA's recordkeeping requirements.

82. Defendants acted willfully in their violations of the FLSA's requirements.

83. The Plaintiffs and the class members seek: (1) damages in the amount of their unpaid overtime compensation; (2) liquidated damages as provided by the FLSA for overtime violations; (3) attorneys' fees and costs; and (4) such other legal and equitable relief as this Court deems just and proper, with all amounts to be determined at trial.

**COUNT II.**
**[Violation of New Jersey Labor Law—Minimum Wage and Overtime Pay Brought on behalf of the Plaintiffs and Rule 23 Class]**

84. Plaintiff, on behalf of themselves and the other similarly situated class members, re-alleges and incorporates by reference all allegations in all preceding

paragraphs as though fully set forth herein.

85. At all relevant times, Defendants maintained a policy and practice of willfully refusing to pay both: (a) the statutory minimum wage, and (b) overtime compensation at one and one-half times the regular hourly rate to which the Plaintiffs and the class members were legally entitled.

86. Defendants' failure to pay the Plaintiffs was not in good faith.

87. By reason of Defendants' failure to pay the Plaintiffs and the class, the Plaintiffs and Class Members are entitled to recover from Defendants their full unpaid minimum wage and overtime pay, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursement of the action pursuant to NJWHL §§34:11-56a *et seq*

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, on behalf of themselves and the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief: Authorizing the Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of a court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages and minimum wages;

a) Certification of this case as a collective action pursuant to FLSA;

b)  Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing the Plaintiffs and their counsel to represent the Collective Action Members;

c)  A declaratory judgment that the practices complained of herein are unlawful under FLSA and NJWHL;

d)  An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

e)  An award of unpaid minimum wages and overtime wages due under FLSA NJWHL plus compensatory and liquidated damages;

f)  An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the minimum wage and overtime compensation pursuant to 29 U.S.C. §216;

g)  An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to minimum wages and overtime compensation, pursuant to the NJWHL;

h)  An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NJWHL;

i)  The cost and disbursements of this action;

j) An award of prejudgment and post-judgment fees; and

k) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: March 14, 2025

By: _____
Lina Stillman
**STILLMAN LEGAL P.C**
42 Broadway, 12th Floor
New York, New York 10004
Telephone: (212) 203-2417
*Attorneys for Plaintiff*